## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Allen Dominek and Arlen Dominek, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | |
| | ) | |
| Equinor Energy L.P. f/k/a and | ) | Case No. 1:19-cv-288 |
| a/k/a Brigham Oil & Gas L.P. and | ) | |
| Statoil Oil and Gas L.P., and | ) | |
| Grayson Mill Williston, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' motion to dismiss filed on February 8, 2023  See Doc. No. 78.  The Plaintiffs filed a response in opposition to the motion on March 8, 2023.  See Doc. No. 85.  The Defendants filed a reply brief on March 22, 2023.  See Doc. No. 88.  For the reasons set forth below, the motion is granted.

## I.     BACKGROUND

The Plaintiffs, Allen Dominek and Arlen Dominek, commenced this action against Defendant Equinor Energy LP ("Equinor") by filing a complaint in federal court on December 31, 2019.  See Doc. No. 1.  The dispute arises over the proper allocation of royalties from a horizontal well (Weisz 11-14 XE #1H) and confusion created by multiple overlapping spacing units located in Williams County, North Dakota, which were created by a series of orders issued by the North Dakota Industrial Commission ("Industrial Commission").   Jurisdiction is based upon diversity of citizenship.  28 U.S.C. § 1332.  The complaint contains claims for an accounting, the payment of

back royalties, and declaratory judgment.  Equinor, the operator of the Weisz well, filed an answer and counterclaim on February 7, 2020.  See Doc. No. 11.

In 2021, Equinor transferred assets and operator status for the Weisz well to Grayson Mill Williston, LLC ("Grayson Mill").  Grayson Mill is now the operator of the Weisz well.  Due to Equinor's transfer of the Weisz well to Grayson Mill, the parties filed a stipulation requesting that the Court issue an order joining Grayson Mill as a Defendant pursuant to Fed. R. Civ. P. 20.  See Doc. No. 58.  Pursuant to Rule 20(a)(2), the Court granted the request on December 14, 2021.  See Doc. No. 60.  An amended complaint adding Grayson Mill as a Defendant was filed on December 28, 2021.  See Doc. No. 62.  Equinor remained as a Defendant as well.

On March 16, 2022, the Court certified five questions to the North Dakota Supreme Court related to the complex oil and gas royalty questions presented by the case.  See Doc. No. 70.  On November 23, 2022, the North Dakota Supreme Court issued an answer to the first question posed but declined to answer the remaining questions.  See Doc. No. 75.

On February 8, 2023, the Defendants filed a motion to dismiss for lack of jurisdiction in which they contend the Plaintiffs' complaint fails to properly allege that complete diversity exists and Plaintiffs have failed to exhaust their administrative remedies.  See Doc. No. 79.  On May 2, 2023, the Court granted the Plaintiffs' motion to amend the complaint to better address the citizenship of the parties while the Court deferred ruling on the motion to dismiss.  See Doc. No. 90.  A second amended complaint was filed on May 5, 2023.  See Doc. No. 91.  The Defendants have both filed answers to the second amended complaint.  See Doc. Nos. 92 and 95.  The filing of the Second Amended complaint did not materially alter the issues raised in the motion to dismiss which has been fully briefed and is ripe for decision.

## II.     STANDARD OF REVIEW

The Defendant's motion to dismiss for lack of subject-matter jurisdiction is filed pursuant to Rule 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.  Since the pleadings are closed, the Defendants should have filed their motion pursuant to Rule 12(c).  However, the effect is the same as all the defenses enumerated in Rule 12(b) may be raised after an answer is filed upon a 12(c) motion and the motion will be decided upon the same standard as applied to a motion under Rule 12(b).  See 5C Wright & Miller, Federal Practice and Procedure § 1367 (3d ed. 2023); see also Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012).  A Rule 12(h)(3) motion may be raised on a motion under Rule 12(c).  Id.  The same standard applies to motion made under Rule 12(b)(1) and one made under Rule 12(h)(3).  See 5C Wright & Miller, Federal Practice and Procedure § 1393 (3d ed. 2023); Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015).  The difference between a motion to dismiss for lack of subject matter jurisdiction filed under Rules 12(b)(1), 12(c), and 12(h)(3) is purely acedemic.

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  "Subject matter jurisdiction defines the court's authority to hear a given type of case."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  Jurisdictional issues are a matter for the Court to resolve prior to trial.  Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction.  Osborn, 918 F.2d at 729 n.6.  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Id.  (internal citations

3

omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Id. (internal citation omitted).  If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Defendants cite only to the amended complaint and the shortcoming they suggest are contained therein.  The motion is clearly a facial attack and both parties understand it to be so because the argument concerns an alleged pleading deficiency rather than a failure to factually comport with the jurisdictional prerequisites.  Therefore, the Court will treat the motion as a facial attack and afford the Plaintiffs, the non-moving party, all the protections afforded by Rule 12(b)(6).  The Court will consider only the complaint and the exhibits attached to the complaint.  See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (discussing a facial attack).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff must show that success on the merits is more than a "sheer possibility."  Id.  A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause

of action." Id. at 681.  Detailed factual allegations are not necessary under the Rule 8 pleading

standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it

tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009).

The determination of whether a complaint states a claim upon which relief can be granted is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." Id. at 679.  Dismissal will not be granted unless it appears beyond doubt the plaintiff can

prove no set of facts entitling plaintiff to relief.  Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir.

2013).


## III.   LEGAL DISCUSSION

### A.   DIVERSITY JURISDICTION

The Defendants contend the Plaintiffs failed to adequately plead diversity jurisdiction in that

they did not specify the citizenship of the Defendants, both of which are unincorporated entities –

a limited partnership and a limited liability company.  The Plaintiffs were permitted to file a second

amended complaint which, along with Equinor's Rule 7.1(a)(2) disclosure, has clarified the issue

of whether complete diversity exists.

The Plaintiffs assert the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Under

28 U.S.C. § 1332(a), federal courts have subject matter jurisdiction over civil actions between parties

with complete diversity of citizenship where the amount in controversy exceeds $75,000.

"Complete diversity of citizenship exists where no defendant holds citizenship in the same state

where any plaintiff holds citizenship." <u>OnePoint Solutions, LLC v. Borchert</u>, 486 F.3d 342, 346 (8th Cir. 2007). Federal courts are courts of limited jurisdiction, and it is presumed that jurisdiction is lacking until the party claiming jurisdiction demonstrates otherwise. <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994). Subject matter jurisdiction cannot be waived, and if it appears the subject matter jurisdiction is lacking, the court is obligated to consider the issue *sua sponte*. <u>James Neff Kramper Family Farm P'ship v IBP, Inc.</u>, 393 F.3d 828, 834 (8th Cir. 2005); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

The citizenship of a limited liability company is the citizenship of <u>each</u> of its members. <u>Id.</u> Likewise, a limited partnership's citizenship is the citizenship of each of its partners. <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 189 (1990). A corporation, including an alien corporation, is deemed to be a citizen of its state or place of incorporation <u>and</u> the state or place where it has its principle place of business. 28 U.S.C. § 1332(c)(1); <u>In re Arrowhead Cap. Mgmt. LLC Class Litig.</u>, 712 F. Supp. 2d 924, 929 (D. Minn. 2010). Diversity of citizenship is determined at the time the action is filed. <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 570-71 (2004); <u>Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.</u>, 149 F.3d 794, 796 (8th Cir. 1998). "Diversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action" or subsequent events provided the subsequently added nondiverse party was not indispensable at the time the action was commenced. <u>Freeport-McMoRan, Inc. v. K N Energy, Inc.</u>, 498 U.S. 426, 428 (1991); <u>Dominium Austin Partners</u>, <u>L.L.C. v. Emerson</u>, 248 F.3d 720, 725 (8th Cir. 2001). The corollary to this rule is that "if diversity did not exist when the complaint was filed, it cannot be created by a change of domicile by one of the parties or some other event." <u>Saadeh v.</u>

Farouki, 107 F.3d 52, 57 (D.C. Cir. 1997).

The Plaintiffs are citizens of Florida and Ohio.  See Doc. No. 91.  Equinor is a citizen of Nevada, Delaware, and Texas.  See Doc. No. 94.  The Court need not inquire into the citizenship of Grayson Mill as it was added as a party more than a year after the action was filed and was not an indispensable party at the time the action was commenced.  See Doc. No. 90.  Thus, the Court finds diversity is complete.

### B.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Defendants contend the Plaintiffs failed to exhaust their administrative remedies before the North Dakota Industrial Commission.  The Plaintiffs argue the Industrial Commission cannot provide them the relief they seek.  It is undisputed the Plaintiffs did not seek any sort of redress before the Industrial Commission.

The doctrine of administrative exhaustion mandates that "a plaintiff must administratively exhaust her remedies before filing suit in federal court."  King v. United States, 3 F.4th 996, 999 (8th Cir. 2021) (discussing cases).  The failure to exhaust administrative remedies makes an action subject to Rule 12(b)(1) dismissal for lack of subject-matter jurisdiction.  See id.  It is well-established that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed."  Reiter v. Cooper, 507 U.S. 258, 269 (1993); see Harris v. P.A.M. Transport, Inc., 339 F.3d 635, 638 (8th Cir. 2003) (noting failure to exhaust administrative remedies requires dismissal).

The exhaustion requirement serves four primary purposes.  First, it carries out the

congressional purpose in granting authority to the agency by discouraging the frequent and deliberate flouting of administrative processes [that] could ... encourag[e] people to ignore its procedures.  Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding.  Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all, if the parties successfully vindicate their claims before the agency.  Without an exhaustion requirement, people would be encouraged to ignore the administrative dispute resolution structure, destroying its utility.

Peters v. Union Pacific R.R. Co., 80 F.3d 257, 263 n. 3 (8th Cir. 1996) (internal quotations and citations omitted).   "As a general rule, judicial interference should be withheld until the administrative process has run its course." Burlington Northern, Inc. v. Chicago and North Western Transp. Co., 649 F.2d 556, 558-59 (8th Cir. 1981).  The Eighth Circuit regularly applies the exhaustion doctrine in cases where a litigant has failed to fully adhere to the administrative appeals process provided by agency regulations.  See Klaudt v. United States Dep't of Interior, 990 F.2d 409, 411-12 (8th Cir. 1993).

The North Dakota Supreme Court has advised that "[d]ismissal for lack of subject matter jurisdiction is generally appropriate if the plaintiff fails to exhaust administrative remedies, because failure to exhaust those remedies precludes making a claim in court." Cont'l Res., Inc. v. Counce Energy BC #1, LLC, 905 N.W.2d 768, 771 (N.D. 2018).  The exhaustion doctrine  applies to claims subject to the Industrial Commission's review in the first instance.  Id. at 772 ("Because the parties have failed to exhaust their administrative remedies before the Commission, we conclude the district court lacked subject matter jurisdiction over this lawsuit."); Wisdahl v. XTO Energy Inc., No. 4:13-CV-136, 2014 WL 10537960, at *15 (D.N.D. May 14, 2014) (proposed class action concerning

flaring natural gas lacked subject-matter jurisdiction where plaintiffs failed to exhaust administrative remedies before the Industrial Commission).

In this case, the Court agrees with the Defendants that the Plaintiffs' claims require interpreting and applying the Industrial Commission's pooling orders.  The Industrial Commission's regulations state: "The commission, its agents, representatives, and employees are charged with the duty and obligation of enforcing all rules and statutes of North Dakota relating to the conservation of oil and gas."  N.D. Admin Code § 43-02-03-05.  The Plaintiffs' claims require the interpretation and application of at least two pooling orders which are not easily understood.  Such review falls precisely within the Industrial Commission's jurisdiction as the regulatory body which created spacing units.  The Industrial Commission should be given the first opportunity to explain its orders, create a factual record, correct its error, and explain how its orders should be interpreted.  Klaudt, 990 F.2d at 412.  At present, the Court is faced with interpreting pooling orders in the absence of any meaningful administrative record and would be required to guess at what the Industrial Commission intended.  The Plaintiffs ask the Court to interpret the Industrial Commission's pooling orders in the first instance and without the benefit of the Industrial Commission's input.  This is precisely the situation the exhaustion doctrine was intended to prevent.

The Court has no doubt the Plaintiffs' claims are subject to the jurisdiction of the Industrial Commission as the North Dakota Supreme Court has repeatedly emphasized that Chapter 38-08 of the North Dakota Century Code grants the Industrial Commission broad authority to regulate oil and gas development.  Counce Energy, 905 N.W.2d at 771; Wisdahl, 2014 WL 10537960, at *14 ("Chapter 38–08, along with the orders and rules of the Industrial Commission implementing those provisions, necessarily supersede many common law property claims.").  The Industrial

Commission's regulations state: "The commission, its agents, representatives, and employees are charged with the duty and obligation of enforcing all rules and statutes of North Dakota relating to the conservation of oil and gas."  N.D. Admin. Code § 43-02-03-05.  Chapter 38-08 gives the Industrial Commission extensive authority to issue pooling orders.  Protection of correlative rights and prevention of waste are matters the North Dakota Legislature has entrusted to the Industrial Commission.  See N.D.C.C. §§ 38-08-07, 38-08-08.  Allowing the Industrial Commission the opportunity to explain the meaning of the language it used in its pooling orders is not the same as deciding a contractual or royalty dispute.  The Industrial Commission's expertise in these matters is ordinarily entitled to great deference.  See Hanson v. Indus. Comm'n, 466 N.W.2d 587, 590–91 (N.D. 1991).  To decide the issues presented in this case without the benefit of the Industrial Commission's input in the first instance would be contrary to the design of Chapter 38-08 and the purpose of the exhaustion doctrine.

The Court concludes the Plaintiffs' claims fall within the Industrial Commission's jurisdiction and the Plaintiffs failed to exhaust their administrative remedies.  Given this failure, the Court concludes it lacks subject matter jurisdiction.

III.   **CONCLUSION**

Accordingly, and for the reasons set forth above, the Defendants' motion to dismiss (Doc. No. 78) is **GRANTED**.  The case is dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated this 31st day of May, 2023.

10

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court